IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM JAMES WALKER, JR. | : | CIVIL ACTION |
| v. | : | |
| CITY OF PHILADELPHIA, et al. | : | NO. 06-609 |

MEMORANDUM

McLaughlin, J.                                                 August 4, 2010

      The pro se plaintiff, William James Walker, is a prisoner in the Philadelphia Prison System. While incarcerated, he brought suit under 42 U.S.C. § 1983 for violations of the Eighth Amendment against numerous defendants, including the City of Philadelphia, various corrections officers, Prison Health Services, Inc. ("PHS"), Dr. Demetrios Skliros, and Nurse Elizabeth Boxer.[1] He alleges that prison officials used excessive physical force against him, in violation of his civil

---

[1] The plaintiff filed his second amended complaint, the operative complaint in this action, on March 30, 2007. In it, he listed forty-four individuals as defendants, including certain unidentified individuals: Dr. John Doe #1, Dr. John Doe #2, and Nurse Marie. In response, On April 3, 2007, the Court ordered the Clerk of Court to add several parties to this action as named defendants, none of whom were these unidentified individuals. The unidentified individuals are not defendants in this matter: the plaintiff never sought to amend his complaint to fully name them, they were never served, they never answered the complaint, and no counsel made an appearance to represent them.

     The summary judgment record appears to identify who Dr. John Does #1 and #2 may be. Amendment at this point, however, is overdue and would be futile because the Court finds that the plaintiff's medical treatment or lack thereof does not rise to a constitutional violation.

rights.  These officials were also deliberately indifferent to the plaintiff's needs for exercise, showers, and recreation, and they were deliberately indifferent in responding to the plaintiff's grievances.  The plaintiff also alleges that PHS, Dr. Skliros, and Nurse Boxer were deliberately indifferent to the plaintiff's medical needs, and that supervisors allowed these illegal acts to occur.  He lists his damages as a broken nose that healed out of place, severe back pain, a permanently bruised face, depression, and paranoid schizophrenia.

Because only PHS, Dr. Skliros, and Nurse Boxer move for summary judgment, the Court evaluates only those claims asserted against them: deliberate indifference towards the plaintiff's medical needs, and supervisory liability.  For the reasons stated below, the Court grants the moving defendants' motion.

I.  Summary Judgment Record:[2]

The plaintiff became a prisoner in the Philadelphia Prison System on April 7, 2005.[3]  During his incarceration, he was involved in several altercations with prison officials, which resulted in the need for medical treatment.  Second Amended

---

[2] The Court details only those aspects of the record that are relevant to the instant motion and relate to the plaintiff's medical care.

[3] The plaintiff has been incarcerated in the Philadelphia Prison System at least three times prior to the incarcerations that are relevant to the present matter.  See Lock & Track Admission History Report, Ex. B to Defs.' M.

2

Complaint ¶ 3 ("Compl."); Lock & Track Admission History Report, Ex. B to Defs.' M.

The first incident occurred on July 7, 2005, and it involved a physical altercation with three correctional officers. Thereafter, the plaintiff was handcuffed and taken to the prison's medical facility. He was treated by Dr. Mohammed Haque, who is not a defendant in this matter. Dr. Haque recorded in the plaintiff's progress notes that the plaintiff had a small laceration on the front of his head, redness in both eyes, and an abrasion on the front, left side of his chest. He also recorded these injuries in a Use of Force Incident Form. Dr. Haque then ordered a wound check every shift, Motrin three times a day as needed, the application of ice, and sutures to the laceration on the plaintiff's forehead. Compl. ¶¶ 18-30; Pl.'s Inmate Grievance Form, July 8, 2005, Ex. C to Defs.' M.; PHS Treatment Notes, Ex. D to Defs.' M.; Use of Force Incident Form, Ex. E to Defs.' M.

The plaintiff filed a grievance on July 8, 2005, in response to his medical care. He complained that a doctor told him that he had a broken nose, but that he was not provided any treatment for this injury.[4] He does not allege, nor did he

---

[4] In his deposition, the plaintiff testified that a Caucasian female nurse informed him of his broken nose. Dep. of William James Walker Part I at 141 ("Walker Dep. I"), Ex. H to Defs.' M.

3

grieve, any other maltreatment stemming from this incident; he admits that he received ice and stitches for his other injuries, that his stitches were removed one week later, and that the laceration on this forehead began to close. Ex. C.; Compl. ¶¶ 33; Dep. of William James Walker Part I 51-52 ("Walker Dep. I"), Exs. F, G, H to Defs.' M.

There is no indication in any medical records that the plaintiff's nose was broken. There is also no indication nor allegation that Dr. Skliros or Nurse Boxer was involved in treating the plaintiff at this time, nor were Dr. Skliros or Nurse Boxer identified in the grievance filed. See Exs. D and E; Walker Dep. I 140-42.

The plaintiff was released from custody on August 16, 2005, but he was incarcerated again on September 2, 2005. On September 13, 2005, he was involved in a second altercation with a correctional officer that resulted in a forehead injury. Compl. ¶¶ 37-40, 50-60; Ex. B.

Following this incident, the plaintiff was escorted to the prison medical facility, and Dr. Skliros evaluated the plaintiff. In his examination report, Dr. Skliros indicated that there was "no evidence of any serious bodily injury." Indeed, the plaintiff stated in his deposition that his injuries amounted to a bruise on his face. Health Services Report on Examination of Inmate Involved in Use of Force Incident, Sept. 13, 2005, Ex.

I to Defs.' M.; Walker Dep. I 72-73.

The plaintiff claims that Dr. Skliros "refused to treat" the plaintiff, and that the doctor told him that he had a few cuts and bruises, but would heal. The plaintiff did not complete a grievance related to any lack of medical treatment. Compl. ¶ 63.

Although not alleged in the complaint, Dr. Skliros treated the plaintiff a second time on September 13, 2005, after the plaintiff attempted a suicide. Dr. Skliros completed an Emergency Room Referral Request, and the plaintiff was transferred to the emergency room at Frankford Hospital for behavioral services. The plaintiff does not indicate any maltreatment related to this care. Progress Note of Sept. 13, 2005, Ex. K to Defs.' M.; Emergency Room Referral, Ex. L to Defs.' M.

The third incident occurred on October 4, 2005, where again, the plaintiff was involved in an altercation with correctional officers, this time after the plaintiff flooded his cell. The plaintiff alleges that the officers hurt his head and chest, and that they sprayed him with pepper spray. Compl. ¶¶ 67-72; Walker Dep. I 78.

The plaintiff was escorted to the prison medical facility, and Dr. A. Simmons, who is not a named defendant, treated the plaintiff. Dr. Simmons referred the plaintiff to the

mental health department.  Again, the plaintiff does not allege in his complaint that he was maltreated or denied medical care for any injury or medical need related to this incident.  Nor did he file a grievance in response to the medical care he received on this date.  Progress Note, Ex. N to Defs.' M.

The fourth incident occurred on November 29, 2006.  The plaintiff alleges that on this day, he began to feel "suicidal as a side effect of the medication he takes," and that he was not informed of this possible side effect.  A lieutenant caught the plaintiff with a rope tied around his neck in an apparent suicide attempt.  An altercation with prison staff ensued, resulting in the use of pepper spray, and the plaintiff was taken to the prison medical facility.  A nurse, who is not Nurse Boxer and who is not named as a defendant, examined him, finding no injuries.  The plaintiff was then sent for a psychiatric evaluation.  Progress Note, Ex. P to Defs.' M.

The plaintiff filed a grievance in response to his medical treatment.  He complained that the nurse refused to treat him after the altercation, even though the plaintiff's hands were purple and bruised from the handcuffs he wore.  The plaintiff received a response to his grievance on January 12, 2007, indicating that because no medical doctor was present, the patient was transferred to the detention center, but that he was evaluated by a doctor on November 30, 2006, and on December 2,

2006. The plaintiff appealed the grievance response, stating that the nurse did not immediately send him to a doctor after the incident, did not clean the pepper spray out of his eyes, and did not check that the plaintiff was okay. Inmate Grievance Form, Dec. 2, 2006, Ex. C; Grievance Response, Jan. 12, 2007, Ex. C; Appeal, Jan. 19, 2007, Ex. C.

During his deposition, the plaintiff testified that the medication referenced in his complaint is Effexor. He had been taking Effexor for several years, and it had initially been prescribed to him when he visited Hispanic Community Counseling Services in 2002. The plaintiff does not allege that Dr. Skliros or Nurse Boxer prescribed Effexor to the plaintiff. Nor does the plaintiff allege that he advised Dr. Skliros or Nurse Boxer of problems associated with the Effexor. Also, on February 28, 2005, the plaintiff signed a medication consent form, which indicated that depression, among other conditions, are possible side effects upon taking Effexor. Deposition of William James Walker Part II at 30, 31-32 ("Walker Dep. II"), Ex. O to Defs.' M.; Medical Consent Form, Ex. Q to Def.'s M.

The fifth incident occurred on December 31, 2006, which again involved an altercation with correctional officers. The plaintiff was escorted to the medical facility and was seen by Nurse Boxer. Nurse Boxer "ordered" the plaintiff to go to the psychiatric unit. A female doctor discharged the plaintiff from

7

the psychiatric unit on January 1, 2007.

The plaintiff filed a grievance on January 2, 2007, alleging that the medical personnel who saw him tried to cover up for the correctional officers because the nurse wrote on an incident report that the plaintiff wanted to hurt himself. He also filed two more grievances, one on February 2, and one on February 9, 2007, related to his Effexor. The grievances detailed that the plaintiff was taken off Effexor but then put back on it, even though it can cause suicidal effects. The plaintiff does not name Dr. Skliros or Nurse Boxer in these grievances, nor does he indicate that they had any role in his medication. Inmate Grievance Forms, Feb. 2, 2007, Feb. 9, 2007, Exs. Q and S to Pl.'s Compl.

The plaintiff initially brought suit on February 9, 2006, but the case was closed statistically because the plaintiff failed to move for in forma pauperis status, and he did not pay the filing fee. The Court granted the plaintiff's motion to file an amended complaint, and it held a Rule 16 status conference on January 11, 2007. Following the Rule 16 conference, the Court again allowed the plaintiff to amend his complaint, and the plaintiff filed his second amended complaint, the operative complaint, on March 30, 2007.

The Court held an on-the-record telephone conference on October 5, 2007, and it ordered the Clerk of Court to attempt to

obtain counsel for the plaintiff from the prisoner's civil rights panel.[5] It held another telephone conference on November 9, 2007, and it set a discovery schedule, which was extended thereafter pursuant to the parties' requests.

On April 8, 2008, the plaintiff sent a letter to the Court stating that he would like to dismiss his case, and the Court granted the plaintiff's request. The plaintiff then moved to reopen his case. On June 26, 2009, the Court granted the plaintiff's motion, having found extraordinary circumstances to justify doing so. The Court held an on-the-record status conference on October 7, 2009, and it set another discovery schedule. Discovery, including depositions and document exchanges, occurred, and then the moving defendants filed their motion for summary judgment. In an Order, the Court explained to the plaintiff how to respond to a motion for summary judgment. It first gave him one month to respond to a motion, and it extended this response time to approximately three months.

II. Analysis

PHS, Dr. Skliros, and Nurse Boxer move for summary judgment as to all claims against them on the grounds that the plaintiff failed to exhaust his administrative remedies pursuant to the Prisoner Litigation Reform Act ("PLRA"), the claims do not

---

[5] The Clerk was ultimately unable to find counsel for the plaintiff.

evince an Eighth Amendment violation, and PHS cannot be held vicariously liable. The plaintiff opposes the motion, stating that he did exhaust his administrative remedies and he did have serious medical needs that were treated with deliberate indifference. He does not cite to the record to substantiate his claims.

Under Rule 56 of the Federal Rules of Civil Procedure, a party moving for summary judgment must show that there is no genuine issue as to any material fact and that judgment is appropriate as a matter of law. Fed. R. Civ. P. 56(c)(2). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the burden then shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. <u>Id.</u> at 247-48.

A plaintiff's allegations and denials, unsupported by facts of record, do not create an issue of material fact sufficient to defeat summary judgment. See Fed. R. Civ. P. 56(e)(2); <u>Liberty Lobby</u>, 477 U.S. at 248-49. In addition,

although pro se filings are entitled to liberal construction, the plaintiff must still set forth facts sufficient to survive summary judgment. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Zilich v. Lucht, 981 F.2d 694, 694-96 (3d Cir. 1992).

    A.    Exhaustion

The PLRA applies to any action where the plaintiff was a prisoner at the time of filing the action. Abdul-Akbar v. McKelvie, 239 F.3d 307, 314 (3d Cir. 2001). Pursuant to the PLRA, "No action shall be brought with respect to prison conditions under Section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e. An action based on "prison conditions" includes claims related to the nature of the services provided. Booth v. Churner, 206 F.3d 289, 294 (3d Cir. 2000).

Proper exhaustion of administrative remedies requires the filing of a timely or otherwise procedurally non-defective grievance. Woodford v. Ngo, 548 U.S. 81, 83-84 (2006). The grievance must identify any persons who may have information that could be helpful in resolving the grievance. Spruill v. Gillis, 372 F.3d 218, 234 (3d Cir. 2004) (finding that Pennsylvania Department of Corrections grievance policy requires naming of individuals if identity is relevant to plaintiff's claims); see Jones v. Bock, 549 U.S. 199, 217-18 (2007); Philadelphia Prisons

11

Policies and Procedures, Ex. Q to Defs.' M.

Here, the plaintiff failed to exhaust his administrative remedies. He did not file any grievances related to the incidents on September 13, 2005, and October 4, 2005. Further, the plaintiff never identified or referenced Dr. Skliros or Nurse Boxer in his grievances filed for the incidents on July 7, 2005; November 29, 2006; and December 31, 2006.

### B. Deliberate Indifference

Even if the plaintiff had exhausted his administrative remedies, his claim would fail because he does not establish deliberate indifference on the part of the moving defendants. To demonstrate an Eighth Amendment violation, the plaintiff must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Specifically, the plaintiff must establish: (1) deliberate indifference on the part of prison officials, and that (2) the prisoner's medical needs are serious. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity of a doctor's attention." Lanzaro, 834 F.2d at 347. It may also be determined by the effects upon denial of treatment, including

unnecessary and wanton infliction of pain, or a permanent handicap.  Id.

Deliberate indifference requires the official to have known of and disregarded an excessive risk to inmate health or safety.  The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  Farmer v. Brennan, 511 U.S. 825, 837-38 (1994).  Medical malpractice and negligence do not establish a claim, Estelle, 429 U.S. at 106, nor can a claim rest on a prisoner's dissatisfaction with the care received, see Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979).

Here, the plaintiff did not have a serious medical need sufficient to survive summary judgment.  His needs consist of an alleged broken nose, the lack of treatment for bruises, the lack of treatment after being sprayed with pepper spray, not being seen by a doctor immediately following the November 29, 2006, incident, and taking Effexor.  He also claims that he suffers from severe back pain, a permanently bruised face, depression, and schizophrenia.

He does not point to any evidence, however, to demonstrate his suffering.  Indeed, he acknowledges that his medical records are void of any reference to a broken nose, and there is no evidence of a permanently bruised face or a back

injury. Further, the plaintiff signed a medical consent form, which noted that Effexor may cause depression, and he never complained of any side effects to Dr. Skliros or Nurse Boxer. Overall, none of the plaintiff's injuries, except, perhaps, his depression and schizophrenia, rises to a medical need diagnosed by a physician as requiring treatment, or one that is so obvious that a lay person would easily recognize the necessity of a doctor's attention. Nor do they evince unnecessary pain or a permanent handicap.[6]

Assuming the existence of a serious medical need, the plaintiff's claim still fails because the record does not demonstrate that Dr. Skliros or Nurse Boxer was deliberately indifferent to the plaintiff. The only reference to Dr. Skliros relates to the plaintiff's bruises suffered on September 13, 2005. The only reference to Nurse Boxer relates to the plaintiff's December 31, 2006, incident when Nurse Boxer "ordered" the plaintiff to the psychiatric unit. Neither incident demonstrates that Dr. Skliros or Nurse Boxer knew of and disregarded an excessive risk to the plaintiff's health or safety.

---

[6] To the extent that the plaintiff argues that he suffered from back pain, depression, and paranoid schizophrenia because of a constitutional deprivation of medical care, the Court finds that the record does not support such a claim, since the plaintiff suffered from these ailments prior to his incarceration. See Pl.'s Medical History, Ex. R to Def.'s M.

14

Further, the other incidents not involving Dr. Skliros and Nurse Boxer also fail to demonstrate deliberate indifference on the part of treating medical personnel because there is no indication that the personnel knew of and disregarded a risk to the plaintiff. After the incident on July 7, 2005, the plaintiff received stitches, ice, and Motrin. With respect to the incident on October 4, 2005, the plaintiff did not allege that he was maltreated. The injuries relating to the incident on November 29, 2006, were treated the following day, and any failure to ask the plaintiff if he was okay or to clean out pepper spray in his eyes is not a constitutional violation. Lastly, the plaintiff's claims related to the Effexor, seemingly tied to the November 29 and December 31 incidents, do not demonstrate deliberate indifference; there is no evidence in the record that the medical professionals knew of and disregarded an excessive risk related to the medication.[7]

C. Supervisory Liability

PHS cannot be held vicariously liable for the alleged conduct of its employees pursuant to 42 U.S.C. § 1983. Natale v.

---

[7] Specifically, the plaintiff's medical records reveal that the plaintiff had a "good prior response" to taking this medication. Pharmacy Request Form, May 25, 2005, Ex. T to Defs.' M. Also, the plaintiff claimed in a prior lawsuit, now closed, that failure to administer this medication caused the plaintiff to jump off a second tier of the Philadelphia Detention Center. See William James Walker v. Prison Health Services, Inc., et al., 04-1878 (E.D. Pa. Apr. 30, 2004).

15

Camden County Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003) (holding that third-party healthcare provider for the Camden County Correctional Facility, Prison Health Services, Inc., could not be held vicariously liable for the acts of its employees). To establish liability, the plaintiff must provide evidence that there was a relevant PHS policy or custom, and that the policy caused the constitutional violation alleged. Id.; see Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). There exists no allegations nor evidence in the record to demonstrate that PHS had an official policy, practice, usage, or custom in place that caused the plaintiff harm.

III. Conclusion

    For the reasons stated herein, the Court grants the defendants' motion, and it dismisses Prison Health Services, Inc., Dr. Skliros, and Nurse Boxer from this action.

    An appropriate order follows separately.